## McCullough *versus* The Commonwealth.

1. In order to keep the peace, a constable may arrest, imprison, break open doors and the like.

2. A constable may arrest for reasonable cause of suspicion alone.

3. A jailer is bound to receive a person arrested by a constable for a breach of the peace in his presence.

4. A constable is bound to present to the court all offences inquirable into by them.

5. The return being made under a special oath at the time, is equivalent to an oath and charge before a magistrate.

6. It is the duty of the Quarter Sessions to take notice of such return.

7. The return of a constable against one for selling liquor to minors, &c., under the Act of May 8th 1854, although that act does not impose on him the duty of making the return, is sufficient to authorize the court to issue process for the offender and to direct the district attorney to send a bill to the grand jury.

8. It is not necessary in such case, that the offender should have a hearing before a magistrate before sending a bill to the grand jury.

9. A grand jury cannot indict without a previous prosecution before a magistrate;—except in offences of public notoriety, such as are within their own knowledge, as are given them in charge by the court, and. as are sent to them by the district attorney.

10. Individuals cannot go before a grand jury and prefer charges. This is a breach of privilege on the part of the grand jury and highly improper in the volunteer.

11. When a bill has been sent up by the district attorney, under the sanction of the court upon the return of a proper officer, the bill cannot be quashed except for matters apparent on the record.

November 14th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Quarter Sessions of *Washington county* : of October and November Term, 1870, No. 104.

On the 20th of February 1870, Andrew Neil, constable of Monongahela city, made return to the Court of Quarter Sessions of Peter McCullough, for keeping a tippling house, selling liquor on Sunday, to minors and men of intemperate habits.    On the 21st the court issued a bench warrant, to which the sheriff returned that the defendant had given security for his appearance at the next term.    On the 19th of May, the grand jury returned a bill of indictment charging the defendant with furnishing intoxicating drink to Hezekiah Cooper, a person of known intemperate habits, &c.    On the 10th of May, before pleading the defendant moved to quash the indictment for the following reasons :—

1. The said indictment is not based upon an accusation made before a committing magistrate, founded upon probable cause, and supported by oath or affirmation.

2. The said indictment is not based upon a presentment by the grand jury made from the personal knowledge or observation of its members, or upon the testimony of witnesses who had been previously examined under oath, orally or in writing, by the court, and by the court sent before them.

[McCullough v. The Commonwealth.]

3. The offence charged in the said indictment, is not of such a nature as to require the extraordinary intervention of the court, as that the grand jury, at the instance of the court, should be directed to proceed to its investigation.

The court (Acheson, P. J.), on the same day overruled the motion to quash, and the defendant pleaded, "not guilty."

Same day the jury found the defendant guilty. He thereupon moved in arrest of judgment for the same reasons as those assigned on the motion to quash, except the 3d, viz. "That the offence charged in the said indictment is not of such a nature as to warrant the court, of its own motion, in directing its investigation by the grand jury, without a preliminary examination or a presentment."

The motion was overruled, and May 20th, the defendant was sentenced to pay a fine of $20 and suffer imprisonment for 10 days.

The defendant obtained a writ of error, and assigned for error, overruling the motions to quash and in arrest of judgment.

*D. F. Patterson* (with whom was *T. H. Baird*), for plaintiffs in error cited: Acts of May 8th 1854, sect. 1, Pamph. L. 603, Purd. 666, pl. 31; March 31st 1856, sect. 33 *et seq;* Pamph. L. 207, Purd. 187 pl. 41; Updegraff *v.* Commonwealth, 6 S. & R. 5. On the 3d reason he cited 1 Chitty's Crim. Law 162; 4 Bl. Comm. 301; 1 Bishop's Crim. Prac. 731.

There was no paper-book or oral argument for the Commonwealth.

The opinion of the court was delivered, January 3d 1871, by

AGNEW, J.—At February sessions, 1870, Andrew Neil, a constable, in his quarterly return, under oath, and as a part of it, returned Peter McCullough for keeping a tippling-house contrary to law, and also for selling liquors on Sunday, to minors and to men of intemperate habits. On this return the court awarded process for Peter McCullough, upon which he was arrested, and gave bail for his appearance at the next term. At the following term the district attorney sent up a bill against him to the grand jury, for furnishing intoxicating drinks as a beverage to Hezekiah Cooper, a person of known intemperate habits, contrary to law. This bill was returned a true bill. It was founded upon the Act of 8th of May 1854, commonly called the "Buckalew act," one of the most beneficent laws on the statute book. Viewing the habitual drunkard as a poor captive to appetite, enthralled by a slavery too strong for reason and duty, it comes to his relief by striking down the hand that puts the cup to his lips, and puts it in the power of wife, children and relatives to stay the hand of the seller of strong drink, by a notice which exposes him to punishment, if the warning be disregarded.

[McCullough *v*. The Commonwealth.]

The defendant moved to quash this indictment on the ground that it was not based upon an accusation made before a committing magistrate, founded on probable cause, and supported by oath; that it was not based upon a presentment of the grand jury made from the personal knowledge or observation of any of its members, or upon the testimony of witnesses sent before them by the court; and that the offence is not of that nature which required the extraordinary intervention of the court to order it to be investigated by the grand jury. The substance of all these exceptions is, in short, that the return of the proper constable, under oath, and made to the proper court, is not a sufficient ground to enable that court to direct, or to authorize the district attorney, exercising the powers of the former attorney-general, to send up a bill to the grand jury for the offences returned by the constable. The court refused the motion to quash, the defendant was convicted and sentenced under the indictment, and this certiorari is brought to reverse the proceeding. The ground of the motion to quash brings into view the office and authority of the constable, and the powers of the court and district attorney. The office of constable is ancient, his duties important and powers large. His general duty is to keep the peace; and for this purpose he may arrest, imprison, break open doors, and the like: 1 Black Com. 356; 1 Chitty C. L. 20. to 25. A constable may justify an arrest for a reasonable cause of suspicion alone. Russell *v*. Shuster, 8 W. & S. 309. He may arrest for a breach of the peace in his presence, and deposit the prisoner in jail, and the jailer is bound to receive him: Commonwealth *v*. Deacon, 8 S. & R. 47. And what is more to our present purpose, he is *bound to present to the term or last* court all offences inquirable in those courts: 2 Hawk. P. L. C., chap. 10, sect. 34. Those are all common-law powers, and the last, that of making a return, is in the nature of an official information against the offenders; and, besides being made under a special oath at the time of the return, it is the equivalent of an oath and charge before a magistrate. In this state the Court of Quarter Sessions, which is a court of record, and has jurisdiction to try the offenders, takes the place of all other courts at common law for the trial of ordinary offences; the return to it is appropriate, and it becomes the duty of the court to take notice of the return.

In addition to these common-law duties many statutory duties have been imposed upon constables in this State. Under an old law, he was bound to search public-houses and places suspected of entertaining tipplers on Sunday, and to disperse them quietly. By numerous laws he was bound to make returns under oath of various offences, such as killing deer out of season, unlawful acts against the laws for preserving fish, the births of bastard children, tippling-houses kept without license, the want of index boards

[McCullough v. The Commonwealth.]

required by the road law, breaches of the peace at elections, wagers upon elections, and others which do not recur to my memory. In view of these important duties and authorities we cannot hold that the return of the constable was nugatory, because no special duty is imposed by the Act of 8th April 1854. On the contrary, we think it was a sufficient ground to authorize the court to issue process to bring in the offender, and to direct the district attorney to send up a bill to the grand jury. Nor do we think there was any want of power in the court to direct a bill, or in the district attorney to send up a bill for the offence so returned. It has never been thought that the 9th section of the 9th article of the Constitution, commonly called the Bill of Rights, prohibits all modes of originating a criminal charge against offenders, except that by a prosecution before a committing magistrate. Had it been so thought, the court, the attorney-general, and the grand jury would have been stripped of powers universally conceded to them. In that event the court could give no offence in charge to the grand jury, the attorney-general could send up no bill, and the grand jury could make no presentment of their own knowledge, but all prosecutions would have to pass first through the hands of inferior magistrates; for in all the instances mentioned the defendant could not be heard by himself or his counsel, demand the nature or cause of accusation, or meet the witnesses face to face, until after the bill had been found by the grand jury.

In the Federal courts, and in some of the states, it has been held that the grand jury alone may call witnesses and institute all prosecutions of their own motion, and without the agency of the district attorney: 1 Whart. C. L., ed. 1868, §§ 453 and 458. In this state the power of the grand jury is more restricted, and the better opinion is that they can act only upon and present offences of public notoriety, and such as are within their own knowledge; such as are given to them in charge by the court, and such as are sent up to them by the district attorney; and in no other cases can they indict without a previous prosecution before a magistrate, according to the terms of the Bill of Rights: 1 Wh. C. L., ed. 1868, § 458 and note. It has, therefore, been held not to be allowable for individuals to go before the grand jury with their witnesses and to prefer charges. Such conduct is looked upon as a breach of privilege on part of the grand jury, and as a highly improper act on part of such volunteers. Its effect is to deprive the accused of a responsible prosecutor, who can be made liable in costs, and also to respond in damages for a false and malicious prosecution. It is in violation of the act authorizing the defendant to refuse to plead until the name of a prosecutor be endorsed on the bill of indictment. The usual course, where a presentment is thus surreptitiously procured, and bill founded upon it, has been to quash the indictment on motion, and before

17 P. F. SMITH—3

[McCullough *v.* The Commonwealth.]

plea pleaded. It is the only way to reach the wrong. But when the bill has been regularly sent up by the district attorney, under the sanction of the court, upon the return of a proper officer, as in this case, the bill cannot be quashed unless for matters apparent on the face of the record. The court was, therefore, right in refusing to quash the indictment, and the sentence of the defendant is affirmed.